Case 23-3247 Keith Jones v. Producers Service Corporation Argument not to exceed 15 minutes per side. Counsel, when you're ready, you may proceed for the appellant. Good afternoon, Your Honors. May it please the Court. My name is Danielle Crane. I represent Producers Services Corporation, the defendant appellant in this case. I would like to reserve five minutes of time for my rebuttal. Producers' position is that summary judgment in favor of the plaintiffs was not appropriate in this matter. We believe that, at the very least, there was a genuine issue of material facts such that this case should have moved forward to trial. But when viewing the evidence on the whole, we feel that summary judgment was actually proper in favor of producers. My argument today will turn on two issues. The first, and the most important, is the evidence that's related to the fluctuation in employees' hours. And the second is the evidence related to bonuses and the regular rate that was paid by producers. So turning first to the irregularity in employees' hours, producers paid its oil field workers pursuant to a BELO plan, which is an exception to the typical overtime requirements of the FLSA. The district court took issue specifically with the requirement to pay individuals pursuant to a BELO plan that their hours fluctuate both above and below 40 in a significant number of weeks due to the nature of their work. There was no question before the district court that hours... Let me ask you just what the nature of the work... What is it about the industry that you're pointing to to say that there's this fluctuation, and why? Yeah, in the oil field industry, there are these boom and bust cycles. Right now, I know that they're on a boom cycle, but I believe... Based on the price of gasoline or oil? The need fluctuations, yes, Your Honor. So, I mean, they could pump all they wanted at this site, right, regardless of what the price is, but it's based on demand for... If it's profitable to produce... The client's demand. Then they'll produce, but if it's not profitable based on the price, then they don't... Then they wouldn't have a well to go out and service. So the well, I believe, would belong to, say, a shell. So they're servicing wells owned by other companies. They're not the ones. They're just doing the work for another company that has a need for the workers. These are oil field workers. They go out to a well. They spend 14 days there, maybe seven days, depending on what their schedule is, and they service the well. Okay. So the company doesn't actually own the wells. They just manage the... Not to my understanding, Your Honor. Okay. Thank you. So as I mentioned, there was no question the hours fluctuated both above and below 40 before the district court. The only question was the cause. So summary judgment for the plaintiffs was only proper if the trial court found that producers could not prove that a significant number of weeks fell below 40 because of the nature of the work. And it had to reach that determination without weighing evidence and without making credibility determinations. But as is clear from the opinion in order itself, the court did just that. It said that producers' evidence was, quote, unpersuasive, vague, and failed to explain why there was fluctuations in the nature of the work. On its face, these were... Yeah, the explanation you gave me, I don't see that in any of the evidence. It's just basically people saying there's fluctuation. We produced deposition testimony from at least three plaintiffs saying that it was due to... The question fell to was the fluctuation significant because of the nature of the work or because of scheduling, that they were there for 14 days and they had those scheduled seven days off. And three of the plaintiffs themselves state that it was because the nature of the work. Did you say that downturn in the industry? Kind of summary statements, but you say that's enough to prove your point. Or at least to create a genuine issue of material fact as compared to the evidence that was produced by the plaintiffs. And, you know, again, the court needed to reach that decision without weighing evidence, and we believe it's clear just on the face of the order that the judge was not just looking at the amount or existence of evidence, but he was weighing it and he was making credibility determinations and decided to not rely on the evidence before him from the plaintiffs. If we were to rule your way that you're entitled to summary judgment as to the issue before us, aren't there some other factors of the BELO test that we have to address? There are four different factors. The question regarding a bona fide individual contract was not disputed at the district court level, and the fact that there was a weekly pay guarantee for not more than 60 hours was not disputed. Where the court's opinion and order focus was the fluctuation in hours. And then there is also the requirement that the contract specify a regular rate of pay, not less than minimum wage, and one and one-half times that for hours in excess of the minimum work week, so hours between 40 and 60. Would that issue need to go back to the district court to be decided? We feel strongly that in the briefs on summary judgment, the evidence there was clear as well that the standard for the regular rate and the question of these bonuses is different in the context of a BELO plan than it is for a regular hourly employee entitled to overtime. There the question is whether it is regularly paid. The question is not is it expected, is it promised. All of the evidence and arguments that the plaintiffs presented related to bonuses being announced, whether people expected them. There was no evidence that the plaintiffs produced to say that they were not regularly paid. On the other hand, producers again submitted deposition testimony from three plaintiffs saying that those bonuses weren't guaranteed. My boss had the discretion to give it to me or not, and in fact, they did exercise that discretion. So we feel strongly that the evidence there weighs in our favor as well. Returning to the deposition testimony that was presented, as I mentioned, producers feel strongly that we submitted sufficient evidence to create a question of fact, but also to award summary judgment in producers' favor. For example, we quoted an excerpt of the deposition from Casey Foster where he was asked, and the fluctuation in the number of hours per week that you worked was the result of the work, right, how much there was to do, and he responded yes. Your Honor mentioned this, but Keith Jones was asked why his hours were under 40, and he said not having work. When pressed further, what do you mean not having work? He said not having a well to service. He was asked why wouldn't you have a well to service, and he said because of the downturn, the downturn in the industry. But there was some other deposition testimony of workers who said that the fluctuation was because they were just being given the option of when they would work. I believe the quotation that Your Honor might be referencing is from the court's opinion and order, and that was also from named plaintiff Keith Jones, but importantly, that quote, he was discussing a single week where his hours were low, and I do believe that there's no question that sometimes hours fell below 40 because of scheduling. That's not impermissible. No one's arguing that. These people need to take time to have their weekends and go home and visit their families, but the question is when excluding those weeks that were low because of scheduling, are the remaining weeks still legally significant to justify that fluctuation because of the nature of the work? And the only evidence that the plaintiffs introduced on that point was to point to 30 weeks in the timesheets out of a potential 5,304 weeks that should have been excluded, and then they note in a footnote that there are other weeks that are below 40 that are not the result of scheduling, and those are the weeks that the court needed to focus on to determine if there was a remaining significant amount that fell below 40. We feel like the court just lost its way in looking at those 30 examples and not looking forward to the weeks that were mentioned in the footnote that could still be significant, and as the plaintiffs testified in their depositions, on the whole, they believe that their short weeks were because of the nature of the work. I see that my time is up.  Good afternoon. May it please the court. I'm Josh Sanford. I represent Mr. Jones and the other appellees in this case. The appeal before this court is not frivolous. It's dangerously close because of the decision made by the defendant to not raise as a point of appeal the second summary judgment order. That's the order from January of 20 in which the court found that there was not a justifiable basis to conclude that the bonuses that were paid to the appellees were discretionary. What that means is that even if this court were to determine that there were sufficient facts in dispute on the first prong of the argument that it has just heard regarding the nature of the fluctuation of the hours worked, the second issue, the issue of the discretionary, non-discretionary nature of the bonus payments is not before this court. It has not been preserved for appeal, and therefore the argument about the fluctuation simply doesn't matter. However, having said that, the trial court was right in saying that there wasn't actually a dispute as to what was causing the hours to fluctuate. Both the 30B6 witness and the appellee witnesses, the employees, all testified that they were given ahead of time a schedule, whether it's 14 on, 7 off, 7 on, 3 off, or I think another one was 10 on, 4 off. Those varying hours that they worked were planned in advance. Of course, there's not a circuit level case on this, but you have Massa out of the Northern District of Illinois, and you have Acosta from the Eastern District of Michigan. Both of those cases highlight the fact that if the fluctuation is pre-planned by the employer to accommodate scheduling, then it is not the sort of thing that falls inside the purview of a BELO plan, which of course is an exception to the requirement that overtime wages be paid for hours over 40, generally speaking. A great example for something like this would be firefighting. If you don't know when the fires are raging, you can't plan when you're going to be on and when you're going to be off. But to your point, Judge Bush, the fracking is 24, 7, 3, 6, 5. And there are more wells or less wells, but the wells are always running. And so the undisputed testimony in this case is that the appellees were working 12-hour shifts, 12 on, 12 off, 12 on, 12 off, swapping out with each other, a night shift and a day shift. And there was no time in the record in which they were being sent home because there wasn't a well to work on. Now, they might get laid off. They might have their sort of meta-schedule adjusted from time to time due to cyclical marketplace factors, but not to the nature of the work. And Judge Sargas was correct when he assessed that these leading questions by defense counsel in the depositions of the employees, asking them, wasn't it because of the nature of the work when they said yes, that it really didn't explain what that meant and it was sort of a meaningless throwaway statement viewed in comparison to the 30B6 witness just very clearly saying, we scheduled them 14-7, 14-7, or 7-3, 7-4, 10-4, whatever the schedule was. So because the nature of the fluctuation is really a legal issue and not a factual issue, this court's reviewing the order on cross motions de novo and saying, okay, with the record that the trial court has, is there something there that suggests that the argument made here today, cyclical market factors, was something that was in front of the judge at the trial court level and he just missed it? And the answer is not only no, but also the testimony that counsel today highlights as being most favorable to its position, the testimony of name plaintiff Keith Jones, wasn't relied on by the defendant appellant at the trial court level. It's not a point of evidence that was even preserved for the argument that we have here today. The importance of the determination about whether the bonus payments were nondiscretionary cannot be overstated for this court's assessment of what is the straightest line from today to the correct outcome in this case. Because unless the defendant met its burden of convincing the trial court that the bonus payments were all discretionary, then there's no reason for this court to even weigh in on the fact that there's a dispute about the fluctuation of the hours or the cause of the fluctuation of the hours. In the consent judgment, well let me back up and say motions, motions, orders, orders, the parties reached an agreement and entered a consent judgment which reserved the right to appeal. At that time, the defendant appellant was aware that it needed to appeal both orders. And in the consent judgment, explicitly reserved the right to appeal the November 19 order on the fluctuation issue and the January 20 order on the discretionary bonus issue. Review the notice of appeal. They did not appeal the second order, so much so they didn't even include it, the actual order, in the documents that they provided for your review. It's just not there. However, if this court wants to overlook that fact, which I doubt that it does, but just hypothetically.  Under Rule 3C6, I mean, isn't it, unless you have an express carve-out, aren't you appealing everything about the judgment below? I don't believe that's correct, but I always get educated every day. I think that they have appealed only the order that they identified in the notice. But if I'm wrong, I'm not worried about it. Because the reality is, they bore the burden of proof at the trial court level to convince Judge Sargas that the bonuses that they paid were just discretionary. And not that they were labeled discretionary, but they were discretionary as a matter of law. And the cases are clear that when you tell employees in advance what the bonuses are and give them metrics for how to get there, and by those two things, seek to produce a certain quality or quantity of work or effort from them, those bonuses, whether they are paid or not, become non-discretionary. And I appreciate counsel's willingness today to concede that, as I heard the argument, that if those bonuses are non-discretionary, which the trial court found that the defendant had not carried its burden of proving that they were discretionary, then those amounts must be calculated into the regular rate, and that amount stated in the below contract. And it is undisputed that those numbers were not in there. In fact, it's so undisputed that the defendant spent the entire litigation, as the court is aware from the record, arguing that that wasn't a part of their compensation. That is all that I wanted to say to you today. Unless you have any questions, I'm happy to sit down. I think we have no questions. Thank you. I want to touch on two factors quickly. First, the question of the order that was appealed. There is only one final appealable order in this case. That's the February 23rd consent judgment. And as is clear from our notice of appeal and all of our briefs, that is the order that was appealed here. There are several interlocutory orders that decided some substance in a piecemeal fashion. We had the order that invalidated the below plan. Once that was invalidated, we had an order that looked at bonuses out of the context of a below plan. But those interlocutory orders merged with the final consent judgment, and that is what we appealed. As to plaintiff's concerns over evidence and raising new facts, I just want to reassure this court that all quotations, depositions are properly a part of the record, specifically the deposition testimony of Keith Jones. His entire deposition transcript was filed. We've provided citations to that record in our briefs. And while the specific quotations may not have been contained within the four corners of producer's original motion for summary judgment, it's clear that the court considered that part of the record. As your honors noted, in the court's opinion and order, in validating the below plan, the court even pulled quotations and excerpts from Mr. Jones's deposition transcript. And then I also want to touch quickly on the issue of bonuses again, reminding this court that the judgment of the district court was summary judgment in favor of plaintiffs. Plaintiffs had the burden of proof. So I think that that got a little bit muddled in counsel's argument. And then also this discretionary versus nondiscretionary nature, as I mentioned, in the context of a below plan, the only question is, for purposes of the regular rate, whether things were paid as part of the usual course of paying wages. There's no question about discretionary and nondiscretionary. There's no question about whether people expected things. It's just, were they regularly paid? We submitted deposition testimony on that fact. And all of the evidence presented by the plaintiffs revolved around those non-substantive questions. And then finally, I just want to go back to the reason that we're all here. This is an employee-owned company. Those employees decided that they wanted to pay themselves pursuant to a below plan, so that they knew no matter if they were in a boom or bust cycle, they were going to get paid for 60 hours every week. So if someone worked 20 hours, even though they were scheduled more, they got paid for 60. If they worked 40 hours, they got paid for 60. If they worked 80 hours, they got that guaranteed 60 plus the additional 20. So they got paid for 80 hours. No one here was underpaid. And then as to this issue with scheduling, they recognized that they needed time off to go home to visit their families. They were given the choice of how they wanted to schedule their weekends, whether they wanted to work 14 days on, 7 days off, 7 days on, 3 days off. That's not impermissible. There's not a case out there that says that that's not okay. Everyone is entitled to have their weekends. And naturally, sometimes that scheduling is going to cause short weeks. So instead, the question is, when excluding those short weeks that are caused by scheduling, are the remaining weeks legally significant? Here, again, all the evidence that was before the district court was the weeks that should have been excluded, 30 weeks out of, like I said, a potential 5,000 weeks. The court never reached the question of whether those remaining short weeks were legally significant. They also never, typically what happens in these cases is, for every opt-in plaintiff, all three years, they compile all of the short weeks, exclude the ones that are because of scheduling, are the remaining legally significant. We got cherry-picked a couple of weeks, 30 weeks, from seven of the 34 opt-in plaintiffs from only one year, 2015, which was the furthest back in time when 2016 and 2017 were available. So it appears what happened was the district court drawing all inferences in favor of the plaintiffs determined that those 30 weeks were the only short weeks, and the remaining weeks that the plaintiffs acknowledged existed were to be ignored as well as the deposition testimony. I see my time is up. Thank you, Your Honors. Thank you both for your argument. We'll consider the case carefully.